# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

**STEVEN VINCENT SMITH,**
  Petitioner,

v.

**UNITED STATES OF AMERICA,**
  Respondent.

**Case No. 4:21-cv-8008-CLM**
**(4:16-cr-312-CLM-JHE)**

## MEMORANDUM OPINION

  Steven Vincent Smith has moved to vacate, set aside, or otherwise correct his sentence under 28 U.S.C. § 2255. (Doc. 1). The government has responded to Smith's motion, (doc. 4), and Smith has replied (doc. 6). Smith has also filed several additional motions, seeking judgment on the pleadings (doc. 7), a hearing (docs. 8 & 10), and discovery (doc. 9). For the reasons explained within, the court will **DENY** Smith's motions (docs. 1, 7, 8, 9, 10) and **DISMISS** this case.

### BACKGROUND

  Smith pleaded guilty to one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2). (*See* Doc. 51 in Case No. 4:16-cr-312-CLM-JHE). The court sentenced Smith to 210 months' imprisonment. (*See* Doc. 81 in Case No. 4:16-cr-312-CLM-JHE).

  Smith's conviction was one of many that resulted from the FBI's investigation of the child-pornography website Playpen. Before discussing the specifics of Smith's conviction, the court will provide some context about the NIT warrant that led the FBI to Smith.

NIT warrant: Playpen was a child-pornography website accessible only through use of Tor, a software program that allowed users' IP addresses to remain anonymous and untraceable. *See United States v. Taylor*, 935 F.3d 1279, 1282–83 (11th Cir. 2019). The FBI arrested the Playpen administrator and took control of the website. *Id.* at 1283. To unmask Playpen users obscured by Tor, the FBI created a computer code called the Network Investigative Technique ("NIT"). *Id.* Based on NIT information, officers could identify a Playpen user's internet service provider and the computer affiliated with the Playpen account. *Id.* The FBI hoped that obtaining this information would provide probable cause to seek a warrant to seize users' computers and hard drives. *Id.*

To deploy the NIT, FBI Agent Douglas Macfarlane submitted a search-warrant application to a magistrate judge in the Eastern District of Virginia. *Id.* The warrant application and Agent Macfarlane's accompanying affidavit repeatedly stated that the Playpen server was in the Eastern District of Virginia. *See id.* at 1298–99 (Tjoflat, J., concurring in part and dissenting in part). But Attachment A to the warrant application explained "that the goal of deploying the NIT was to obtain information from the activating computers of *any user or administrator* who logs into Playpen by entering a username and password." *Id.* at 1283 (cleaned up). And page 29 of Agent Macfarlane's affidavit stated that "the NIT may cause an activating computer—*wherever located*—to send to a computer controlled by or known to the government" certain identifying information." *Id.* at 1284.

The Eastern District of Virginia magistrate judge signed the warrant, and the FBI began to use the NIT to find Playpen users. *Id.*

Smith's conviction: Based on NIT data, investigators discovered that someone had used Smith's computer and IP address to log into Playpen. *Id.* Agents then executed a search warrant at Smith's residence. *Id.* That search turned up a thumb drive containing images of child pornography. *Id.* Officers later searched Smith's office and found child pornography on his work computer too. *Id.*

The government charged Smith with receiving child pornography under 18 U.S.C. § 2252A(a)(2). (*See* Doc. 7 in Case No. 4:16-cr-312-CLM-JHE). Smith moved to suppress the seized images, asserting they were fruit of the poisonous tree because the NIT warrant violated the Fourth Amendment. *Taylor*, 935 F.3d at 1284. The court denied Smith's motion, adopting the magistrate judge's recommendation that the court find that the good-faith exception to the exclusionary rule applied. (*See* Docs. 40 & 41 in Case No. 4:16-cr-312-CLM-JHE). Smith then pleaded guilty, reserving the right to contest the denial of his motion to suppress "in an appeal *or* post-conviction proceeding." (*See* Doc. 51 in Case No. 4:16-cr-312-CLM-JHE (emphasis added)).

On direct appeal, Smith once again argued that the NIT warrant was void, so the court should have suppressed the images seized from his home and office. *See Taylor*, 935 F.3d at 1281–82. Over Judge Tjoflat's dissent, the panel majority "add[ed] its voice to the unanimous chorus of ten other courts of appeals who have found that, regardless of any constitutional infirmity, the exclusionary rule should not apply" to evidence discovered because of the NIT warrant. *See id.* at 1293 (Tjoflat, J., concurring in part and dissenting in part). The court agreed with Smith that the Eastern District of Virginia magistrate judge had no jurisdiction under Federal Rule of Criminal Procedure 41 or the Federal Magistrate Judge Act (28 U.S.C. § 636(a)) to issue the NIT warrant because it authorized out-of-district searches. *See id.* at 1287–88. So the court held that NIT searches were void and thus violated the Fourth Amendment. *Id.* at 1288–90. But the court affirmed the denial of Smith's motion to suppress determining that the good-faith exception to the exclusionary rule applied because the officers reasonably relied on the warrant in executing the search. *See id.* at 1292–93. Key to this holding was the finding that the FBI agents didn't intend to deceive the magistrate judge about the out-of-district search authority they sought. *Id.* at 1291–92.

<u>Section 2255 motion</u>: Smith then petitioned for writ of certiorari, which the Supreme Court denied. 140 S. Ct. 1548. Within a year of the denial of his cert petition, Smith placed in the prison mailing system his

§ 2255 motion, challenging his receipt of child pornography conviction. (Doc. 1). The Clerk docketed Smith's motion on March 8, 2021.

## ANALYSIS

Smith's § 2255 motion brings three categories of challenges to his conviction. First, Smith makes several substantive Fourth Amendment arguments, asserting that the good-faith exception to the exclusionary rule doesn't apply to the NIT warrant. Second, Smith contends that the government withheld *Brady* material relevant to his motion to suppress. Third, Smith alleges that both his trial and appellate counsel were ineffective. The court addresses each argument in turn.

### A.   Fourth Amendment

Smith asserts that the good-faith exception to the exclusionary rule doesn't apply to the NIT warrant because Agent Macfarlane knew the NIT would search computers outside the Eastern District of Virginia but submitted a warrant that, Smith says, obscured the NIT's out-of-district scope. In support of this argument, Smith claims: (1) that Macfarlane made a mistake of law that the good-faith exception doesn't excuse; (2) that the NIT warrant's violation of Rule 41 prejudiced him; (3) that Macfarlane misled the magistrate judge; (4) that the magistrate judge abandoned her judicial role in authorizing the warrant; (5) that the NIT warrant didn't provide probable cause to search Smith's computer in Alabama; (6) that the NIT warrant didn't state with particularity that it would search Smith's computer; and (7) that evidence obtained from later warrants executed in Alabama were fruit of the poisonous tree.

The government responds that Fourth Amendment claims aren't typically cognizable in § 2255 proceedings and that in any event, the court should reject Smith's claims under the procedural-bar doctrine.

1. <u>Exclusionary rule in § 2255 proceedings</u>: In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that

4

evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 45, 494 (1976) (footnote omitted). Most circuits have extended *Stone* to Fourth Amendment claims raised by federal prisoners in § 2255 motions. *See Ray v. United States*, 721 F.3d 758, 761–62 (6th Cir. 2013); *Brock v. United States*, 573 F.3d 497, 500 (7th Cir. 2009); *United States v. Ishmael*, 343 F.3d 741, 742–43 (5th Cir. 2003); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993); *United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir. 1980). While the Eleventh Circuit has yet to weigh in on this issue, the court agrees with the analysis from these courts that *Stone*'s principles apply equally to state and federal prisoners. So the court finds that it can address Fourth Amendment claims in § 2255 proceedings only if the petitioner didn't have a full and fair opportunity to raise the claims at trial and on direct appeal.

And though Smith argues otherwise, nothing in his plea agreement prevents the government from opposing his § 2255 motion under *Stone*.[1] *See Ishmael*, 343 F.3d at 743 (rejecting argument that reserving right in plea agreement to bring collateral challenge if use of thermal imaging technology declared unconstitutional meant government couldn't oppose § 2255 petition under *Stone*). To be sure, Smith's plea agreement reserved the right to contest the denial of his motion to suppress "in an appeal ***or*** post-conviction proceeding." (*See* Doc. 51 in Case No. 4:16-cr-312-CLM-JHE (emphasis added)). But the plea agreement doesn't say that Smith could challenge the denial of the motion to suppress both on direct appeal ***and*** collateral review. So the government didn't waive its right to argue that the court shouldn't address the merits of Smith's Fourth Amendment claims in a § 2255 motion because Smith had a full and fair opportunity to litigate these issues on direct appeal.

In the Eleventh Circuit, "opportunity for full and fair consideration must include at least one evidentiary hearing in a trial court and one decision by an appellate court, which if presented with an undisputed factual record gives full consideration to (the prisoner's) Fourth

---

[1] The plea agreement also doesn't prevent the government from arguing that Smith's Fourth Amendment claims are procedurally barred.

Amendment claims." *Sosa v. United States*, 550 F.2d 244, 249 (5th Cir. 1977).[2] Here, the court held a suppression hearing on the images seized because of the NIT warrant. (*See* Doc. 33 in Case No. 4:16-cr-312-CLM-JHE). Magistrate Judge John England then wrote a detailed, 33-page report and recommendation ("R&R") on the NIT warrant, recommending that the court not suppress the images under the good-faith exception to the exclusionary rule. (Doc. 40 in Case No. 4:16-cr-312-CLM-JHE). After reviewing the pleadings and Judge England's R&R, the court adopted Judge England's findings and denied the motion to suppress. (Doc. 41 in Case No. 4:16-cr-312-CLM-JHE). The Eleventh Circuit then affirmed, finding that the FBI reasonably relied on the face of the NIT warrant to conduct their search. *See Taylor*, 935 F.3d at 1292–93. So Smith had a full and fair opportunity to litigate the merits of his Fourth Amendment claims in his criminal case.

Smith counters that the Eleventh Circuit didn't have all the facts when it decided his appeal. Smith says that Macfarlane's testimony in another NIT warrant case establishes that the good-faith exception shouldn't apply because Macfarlane testified that he knew the NIT would deploy to computers outside the Eastern District of Virginia. But the Eleventh Circuit acknowledged in *Taylor* that the FBI agents anticipated searches on computers outside the Eastern District of Virginia *See Taylor*, 935 F.3d at 1292. Indeed, the reason for Judge Tjoflat's dissent was that the warrant application repeatedly referred to the Eastern District of Virginia even though the FBI knew the search would reach computers outside that district. *See id.* at 1302 (Tjoflat, J., concurring in part and dissenting in part). And the panel didn't disagree with Judge Tjoflat's determination that the agents knew of the out-of-district nature of the search. Instead, the court held that the good-faith exception applied because "in their totality, the application and affidavit ***sufficiently disclosed*** the bounds of the intended search." *Id.* at 1292 (emphasis

---

[2] Decisions issued by the former Fifth Circuit before October 1, 1981 are binding in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

added). So considering Macfarlane's testimony wouldn't have added anything to the Eleventh Circuit's Fourth Amendment calculus.

In short, Smith had a full and fair opportunity to litigate his Fourth Amendment claims on direct appeal, so he may not relitigate these claims on collateral review.

2. Procedural-bar doctrine: Smith's Fourth Amendment claims are also procedurally barred. *See Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that were rejected in his direct appeal."). Under the procedural-bar doctrine, prisoners cannot relitigate "issues that a court necessarily or by implication decided against the litigant in an earlier appeal." *Id.* at 1240.

On direct appeal, the Eleventh Circuit either 'necessarily or by implication' rejected the Fourth Amendment arguments that Smith now makes in his § 2255 motion. As discussed, the Eleventh Circuit agreed with Smith that the NIT warrant violated the Fourth Amendment. *See Taylor*, 935 F.3d at 1288. But the court also determined that the officers reasonably relied on the NIT warrant, so the good-faith exception to the exclusionary rule applied. *See id.* at 1292–93. In making this determination, the court held that the exceptions to the good-faith exception didn't apply and that there was "no deterrent value in suppressing the evidence found on . . . Smith's computer[ ]." *Id.* As the government puts it, "[t]he court of appeals already rejected the premise at the heart of Smith's substantive claims—that the [FBI] engaged in a bait-and-switch with the magistrate judge." (Doc. 4 at 17). In other words, this court couldn't grant Smith relief on his Fourth Amendment claims without disturbing the Eleventh Circuit's ruling. So Smith is procedurally barred from bringing his Fourth Amendment claims in his § 2255 motion.

3. Merits: Even if Smith's Fourth Amendment claims were cognizable and not procedurally barred, they would fail on the merits. As the court explained in *Taylor*, "[l]aw-enforcement officers have a duty to

7

lay out the facts—including jurisdictional facts—for reviewing courts, not to anticipate and articulate possible legal hurdles." *Taylor*, 935 F.3d at 1292 n.15. So though Macfarlane was mistaken about the legality of the NIT search, he could reasonably rely on the NIT warrant because he correctly "left the constitutional call to the magistrate judge." *Id.* at 1292.

And in ruling on Smith's direct appeal, the Eleventh Circuit expressly rejected Smith's arguments that (1) the NIT warrant's Rule 41 violation warranted suppression, and (2) that the good-faith exception didn't apply because Macfarlane misled the magistrate judge. *See id.* at 1287–93. Smith's fourth argument is that the good-faith exception doesn't apply because the magistrate judge failed to act in a neutral and detached manner when she signed the NIT warrant. As Judge England noted in his R&R, "[t]here is no indication in this case [that] the magistrate judge 'wholly abandoned [her] judicial role'; on the contrary, she was simply mistaken about her jurisdiction." (Doc. 40 at 28 in Case No. 4:16-cr-312-CLM-JHE). So none of these arguments show that suppression of the seized images was warranted.

Smith's fifth and sixth arguments are that: (1) the NIT warrant didn't provide probable cause to search Smith's computer in Alabama, and (2) the NIT warrant didn't state with particularity that it would search Smith's computer. Judge England addressed these two arguments in his R&R, and the court agrees with his analysis. As Judge England explained, at the time of his R&R, every court to consider the issue had found that there was probable cause to support the NIT warrant. (*Id.* at 17). That's because Playpen users had to follow five elaborate steps to access illicit images of children on the website. (*Id.* at 16). So it's unlikely that a user could wind up at the main Playpen directory by accident. Plus, "the magistrate was entitled to conclude that the overriding reason someone would [log into Playpen] was to permit him to receive and trade child pornography." *United States v. Froman*, 355 F.3d 882, 890 (5th Cir. 2004). So there was probable cause to search Smith's computer.

The NIT warrant was also particular enough about the place to be searched and things to be seized. As discussed in the R&R, Attachment A to the warrant explained that agents would deploy the NIT on the Playpen server and then search any computer accessing the server, regardless of its physical location (Doc. 40 at 15 in Case No. 4:16-cr-312-CLM-JHE). And Attachment B to the warrant set forth the seven pieces of identifying information agents would seize from each computer. (*Id.*). This description adequately explained both what was being searched and what agents would seize.

Smith's final argument is that the images obtained from the two warrants issued in Alabama were fruit of the poisonous tree because of the NIT warrant's unconstitutionality. The court's rejection of Smith's other arguments means that the court must reject this argument too.

—

In sum, Smith has already had the opportunity to litigate his Fourth Amendment claims before this court and the Eleventh Circuit. So Smith cannot bring these claims in his § 2255 motion. But even if Smith could raise his Fourth Amendment arguments on collateral review, they would fail on the merits.

### B. Alleged *Brady* Violation

Smith next argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not informing him of Macfarlane's testimony that he knew the NIT would deploy to computers outside the Eastern District of Virginia.

*Brady* requires the government "to turn over to the defense evidence that is favorable to the accused." *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003). To prove a *Brady* violation, Smith must show three things: (1) that Macfarlane's testimony was either exculpatory or impeaching; (2) that the government either willfully or inadvertently suppressed the testimony; and (3) that the suppression of Macfarlane's

testimony prejudiced Smith. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004).

The court finds that Smith's *Brady* violation claim fails for two reasons. First, Smith hasn't shown that the government suppressed Macfarlane's testimony. As the government points out, Macfarlane's testimony was a matter of public record by the time of Smith's suppression hearing. In fact, both the transcript of Macfarlane's testimony and the opinion Smith cites that quotes that testimony were publicly available about a year before Smith's suppression hearing. *See United States v. Knowles*, 207 F. Supp. 3d 585, 605 (D.S.C. Sept. 14, 2016); (Doc. 61 in *United States v. Matish*, Case No. 4:16-cr-16 (E.D. Va.)). So while the government may not have affirmatively told Smith about Macfarlane's testimony, it didn't withhold the testimony from him.

Second, for a *Brady* violation to occur, the undisclosed evidence must be material. So under *Brady*, the government only needs to disclose "evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings." *Jordan*, 316 F.3d at 1252. And as explained, Macfarlane's testimony that he knew the NIT would deploy outside the Eastern District of Virginia wouldn't have changed the result here. That's because in evaluating Smith's motion to suppress, the Eleventh Circuit assumed that the FBI knew the out-of-district nature of the NIT search but found that the good-faith exception applied because Macfarlane adequately disclosed this fact to the magistrate judge. *See Taylor*, 935 F.3d 1292 & n.15. In other words, Macfarlane's testimony merely confirmed what the court already knew to be true. So Smith hasn't shown that Macfarlane's testimony could alter the outcome of the proceedings, which dooms his *Brady* violation claim.

### C. Ineffective Assistance of Counsel

Smith finally brings a claim for ineffective assistance of counsel. To prevail on his ineffective assistance of counsel claim, Smith must show that (1) his "counsel's performance was deficient," *i.e.*, it "fell below an objective standard of reasonableness," and (2) "the deficient performance

10

prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–92 (1984). The second component requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, this court should be "highly deferential." *Id.* at 689. The court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see also Bell v. Cone*, 535 U.S. 685, 702 (2002) ("tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable).

Smith says that his trial and appellate counsel were ineffective because they failed to raise some of the Fourth Amendment arguments he makes in his § 2255 motion and didn't uncover Macfarlane's testimony about his knowledge of the out-of-district nature of the NIT search. Smith also says that his attorneys should have required Macfarlane or other witnesses with knowledge of the NIT warrant application to testify at his suppression hearing.

Smith has failed to show that his attorneys' conduct fell below the standard of reasonableness set forth in *Strickland*. Smith's attorneys challenged the NIT warrant by making arguments that largely mirror the ones he makes in his § 2255 motion. And Smith's attorneys' choosing to focus on certain Fourth Amendment arguments over others was merely a strategic decision "about which competent lawyers might disagree." *Id.* Smith's attorneys were ultimately unsuccessful in excluding the images seized because of the NIT warrant. But their arguments did convince Judge Tjoflat that the images should be excluded even though ten other circuits had found that evidence discovered under the NIT warrant didn't need to be suppressed. And as explained, Smith's preferred arguments would have fared no better. So any failure to make these arguments didn't prejudice Smith.

Smith's attorneys' failure to rely on Macfarlane's testimony about where the NIT would deploy or to subpoena agents to testify at the

suppression hearing also didn't prejudice Smith. Smith asserts that using this testimony would have shown that the FBI agents knew the NIT warrant violated Rule 41's jurisdictional requirements. But as the court has reiterated throughout this opinion, the Eleventh Circuit held in Smith's direct appeal that the FBI's knowledge of the out-of-district scope of the NIT search didn't require suppression. *See Taylor*, 935 F.3d at 1292–93. And Macfarlane and the other agents could reasonably rely on the fact that they'd "left the constitutional call to the magistrate judge." *Id.* at 1292. Plus, in the two cases Smith cites where the courts considered Macfarlane's testimony, the courts also denied the defendants' motions to suppress evidence seized under the NIT warrant. *See Knowles*, 207 F. Supp. 3d at 610; *United States v. Matish*, 193 F. Supp. 3d 585, 623 (E.D. Va. 2016). So Smith hasn't shown that there's a reasonable probability that using this testimony would have led to a different result. In short, Smith's ineffective assistance of counsel claim fails.

### D. Motions

Smith has filed several motions related to his § 2255 motion. The court will briefly address each motion in turn.

1. <u>Judgment on the pleadings</u>: After the briefing period on Smith's § 2255 motion had expired, Smith moved for judgment on the pleadings (doc. 7). In his motion, Smith asserts that the government's response brief didn't adequately respond to the allegations in his motion and reiterates the claims brought in the § 2255 motion. (*Id.*).

As explained, the claims Smith brings in his § 2255 motion don't entitle him to relief. So the court will **deny** Smith's motion for judgment on the pleadings (doc. 7).

2. <u>Hearings</u>: Smith also moves for a hearing on his motion for judgment on the pleadings (doc. 8) and for an evidentiary hearing under Rule 8 of the Rules Governing § 2255 Proceedings (doc. 10). And in his § 2255 motion, Smith asks the court to hold a *Franks* hearing on the NIT warrant application. (Doc. 1 at 53–55).

Because the court has denied Smith's motion for judgment on the pleadings, Smith's motion for a hearing on that motion (doc. 8) is **denied as moot**. This court isn't required to grant a § 2255 petitioner an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). So, for example, "an evidentiary hearing is unnecessary when the petitioner's allegations are affirmatively contradicted by the record or if such claims are patently frivolous." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) (quotations omitted). But the court should order an evidentiary hearing "if the petitioner alleges facts that, if true, would entitle him to relief." *Id.*

None of Smith's allegations taken as true would entitle him to relief. All three of Smith's constitutional claims largely rely on the premise that if the courts were aware that Macfarlane knew of the out-of-district scope of the NIT search, they would have ruled differently on his motion to suppress. But the Eleventh Circuit's decision in *Taylor* shows that this is not true. *See Taylor*, 935 F.3d at 1292–93. And the record, including the NIT warrant itself, "affirmatively contradicts" Smith's other arguments for why the NIT warrant was deficient. So the court will **deny** Smith's motion for an evidentiary hearing. (doc. 10).

The court will also **deny** Smith's request for a *Franks* hearing. To be entitled to a *Franks* hearing, Smith "must make a preliminary showing that [Macfarlane] made intentional misstatements or omissions (or made misstatements with a reckless disregard for their truthfulness) that were essential to the finding of probable cause." *United States v. Burston*, 159 F.3d 1328, 1333 (11th Cir. 1998).

According to Smith, Macfarlane's statement that he knew the out-of-district scope of the NIT search shows that his warrant application included several "patently false statements" that suggested that the search would occur within the Eastern District of Virginia. But the Eleventh Circuit held in Smith's direct appeal that "in their totality," the NIT warrant application and Macfarlane's affidavit "sufficiently disclosed

13

the bounds of the intended search." *Taylor*, 935 F.3d at 1292. And though Smith argues that a *Franks* hearing is needed to determine whether Macfarlane believed Rule 41(b)(4) authorized the NIT search, it was up to the magistrate judge, not Macfarlane, to determine whether she had jurisdiction to issue the NIT warrant. *See id.* at 1292 & n.15. As a result, Smith isn't entitled to a *Franks* hearing.

3. Discovery: Smith finally asks for leave to conduct discovery under Rule 6 of the Rules Governing § 2255 Proceedings. (Doc. 9). Smith's discovery request asks for the full transcript of Macfarlane's testimony at the Eastern District of Virginia suppression hearing; copies of the FBI's guidelines, rules, and procedures for obtaining warrants; a list of all individuals who reviewed the NIT warrant application along with their positions or titles; and a list of training classes and curriculum required to train FBI agents in how to obtain warrants.

Under Rule 6, "[a] judge may, for good cause, authorize a party to conduct discovery." *See* Rule 6, Rules Governing § 2255 Proceedings. Good cause for discovery exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (cleaned up).

From Smith's allegations, there isn't any reason to believe that if the facts are more fully developed, he could show that he's entitled to relief. Nor would Smith obtaining the discovery he seeks alter the fact that binding Eleventh Circuit precedent says the FBI reasonably relied on the NIT warrant to conduct the NIT search. So the court will **deny** Smith's motion for discovery (doc. 9).

## CONCLUSION

For these reasons, the court will **deny** Smith's motion to vacate, set aside, or correct his sentence (doc. 1) and **dismiss this case with prejudice**. The court will also **deny** Smith's motion for judgment on the

pleadings (doc. 7), motions for hearings (docs. 8 & 10), and motion for discovery (doc. 9).

Rule 11 of the Rules Governing § 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See* Rule 11, Rules Governing § 2255 Proceedings. The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, a "petitioner must demonstrate that a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). The court finds that Smith's claims fail to satisfy either standard. So the court will not issue a certificate of appealability.

The court will enter a separate final order that carries out these findings and closes this case.

**Done** on June 10, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE